OPINION
{¶ 1} Defendant-appellant, Marcus S. Spaulding, appeals his bench-trial conviction for operating a junkyard without a license.
 {¶ 2} In response to a complaint, Lt. John Fetters of the Brown County Sheriff's Department went to appellant's property where he observed a number of vehicles, including several school buses, parked on the property. A pile of cinderblocks, some building materials, various automotive batteries, and other miscellaneous items were scattered over the premises. In addition, a large tent or canopy-like shelter on appellant's property covered a number of drums or barrels and several tables containing buckets and smaller containers. A homemade sign that read: "For Sale Nuts and Bolts" was leaning against one of the shelter poles. Fetters spoke to appellant and advised him he needed to either clean up the property or obtain a junkyard license. Fetters gave appellant four weeks to comply with his directive.
 {¶ 3} Fetters returned four weeks later and noticed no change to the property except that several additional items were being stored on the premises. Appellant was subsequently charged with operating a junkyard without a license in violation of R.C. 4737.06. During trial, appellant testified that he lived on the property and claimed that some of the materials stored there were to be used for a new roof on his residence and the construction of a garage. Appellant admitted to conducting yard sales once or twice a year during which he sold miscellaneous items. According to appellant, the buckets housed under the shelter contained nuts and bolts which were for sale while the other drums, barrels and containers were used for storage.
 {¶ 4} The trial court found appellant guilty as charged, fined him $350 and placed him on probation for two years.[1] As his sole assignment of error, appellant claims the trial court's decision was against the manifest weight of the evidence.
 {¶ 5} Appellant was convicted of violating R.C. 4737.06 which provides that: "No person shall operate or maintain a junk yard * * * unless he has first obtained a license * * *."
 {¶ 6} A "junk yard" is defined as: "an establishment or place of business that is maintained or operated for the purpose of storing, keeping, buying, or selling junk." R.C. 4737.05(B).[2]
 {¶ 7} The Supreme Court of Ohio has summarized the standard of review for manifest weight of the evidence as follows:
 {¶ 8} "The Court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1197-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 9} An appellate court will not reverse a judgment as against the manifest weight of the evidence unless it disagrees with the fact-finder's resolution of any conflicting testimony. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 10} Appellant contends there is no evidence that he maintained or operated his residential property as a commercial or business location to store, keep, buy, or sell junk. Appellant admitted selling material from his property "once or twice a year." The state introduced a series of photographs which clearly depict appellant's property being used as a repository for a hodgepodge of various materials, many of which clearly meet the statutory definition of, and qualify as nothing more than, scrap or junk. While some of these materials may have been intended for construction on the premises, the vast majority appear to be nothing more than an amalgamation of miscellaneous items being stored or kept on appellant's premises.
 {¶ 11} Moreover, the fact appellant lives on the property is not determinative of the property's status as a junkyard. R.C. 4737.05(B) does not require that the property be primarily or principally maintained or operated as a junkyard. There is evidence that appellant stores and sells materials from this location and that a good portion of the materials stored thereon qualify as junk.
Having reviewed the record, we find that appellant's conviction was not against the manifest weight of the evidence. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] The trial court suspended $250 of the fine on condition that appellant either obtain a proper license to operate a junkyard or clean up the property.
[2] "Junk" includes old or scrap copper, brass, rope, rags, trash, waste, batteries, paper, rubber, iron, steel, and other old or scrap ferrous or nonferrous materials. See R.C. 4737.05(A).